UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WILKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF RIVERSIDE, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 5:22-cv-00798-JWH-DTBx<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF FLSA SETTLEMENT, AWARD OF ATTORNEY'S FEES AND COSTS [ECF No. 80]** |

Before the Court is the unopposed motion of Plaintiff Anthony Wilkins for approval of a Fair Labor Standards Act ("FLSA") settlement and for an award of associated attorney's fees and costs.[1] The Court conducted a hearing on the Motion in July 2025. After considering the papers filed in support[2] and the argument of counsel at the hearing, as well as the supplemental briefing submitted after the hearing,[3] the Court **GRANTS** the Motion in substantial part, for the reasons set forth herein.

## I. BACKGROUND

### A. Factual and Procedural History

Wilkins was a Senior Institutional Nurse for Defendant County of Riverside from June 2015 to May 2022.[4] In his Amended Complaint, Wilkins alleges that beginning in April 2017 the County unlawfully withheld overtime and minimum wages during his employment at various Riverside correctional facilities.[5] As a collective action representative under FLSA § 216(b), Wilkins brings this action on behalf of all similarly situated individuals.[6]

---

[1] Pl.'s Unopposed Mot. for Approval of FLSA Settlement, Award of Attorney's Fees and Costs [ECF No. 80]; Pl.'s Am. Unopposed Mot. for Approval of FLSA Settlement, Award of Attorney's Fees and Costs (the "Motion") [ECF No. 84].

[2] *See* Motion; Decl. of Devon M. Lyon in Supp. of the Motion (the "Lyon Declaration") [ECF No. 81]; Decl. of Matthew B. Perez in Supp. of the Motion (the "Perez Declaration") [ECF No. 82]; Decl. of Bryan P. Walter in Supp. of the Motion (the "Walter Declaration") [ECF No. 83]; Decl. of Kelsey F. Ridenhour (the "Ridenhour Declaration") [ECF No. 86].

[3] Pl.'s Suppl. Br. [ECF No. 87].

[4] Motion 1:4-5.

[5] Amended Compl. (the "Amended Complaint") [ECF No. 16] ¶ 1, 3, & 5.

[6] *Id.* at ¶ 2.

In June 2023 the Court conditionally certified the collective class.[7] In October 2023 the Court approved the jointly stipulated Notices and Consent Form.[8] As stated on the approved forms, individuals who met the following criteria were eligible to join in the collective action:[9]

> [Individuals who] worked in the capacity of Senior Institutional Nurse or Supervising Institutional Nurse within the County's Correctional Health Services between May 10, 2019 to the present and were denied payment of minimum wage and/or overtime wages while performing "remote call back work".
>
> -and-
>
> [Individuals who] worked in the capacity of Non-Exempt Nurse within the Larry D. Smith Correctional Facility between May 10, 2019 to the present and [who] were required to leave [their] work radio on and respond during [their] meal breaks.

Following the distribution of the notices, the following individuals opted into the Collective Action: Arnisa Adewunmi, Karen Balajadia, Karen Marshalleck, Letishia Stillwell, Marilyn Brooks, Mark MacNeill, Roberta Rodriguez, Sylvia Derhak, Mickie White-Stanich, Maxwell Setsoafia, Noemi Martinez, Dominique Jackson, Iesha Brown, and Audrianna Lopez (with the exception of Audrianna Lopez, the "Collective Action Plaintiffs").[10] After undertaking written discovery, in November 2024 the parties participated in a

---

[7] Order Granting Pl.'s Mot. for Conditional Certification [ECF No. 34].
[8] Order Approving Attached Notices and Consent Form [ECF No. 43].
[9] See id., Exs. 1 & 2.
[10] See Notices of Consent to Sue [ECF Nos. 45-54, 65, & 66]. At the hearing on the Motion, Plaintiffs' counsel confirmed that Ms. Lopez is "out of the settlement."

mediation session with retired Magistrate Judge Patrick Walsh.[11] The parties did not settle after that session, and they continued to undertake discovery.[12] But in January 2025 the parties reached a settlement through Judge Walsh's continued efforts.[13] The parties finalized the terms of the Settlement Agreement over the next two months.[14]

Wilkins and the Collective Action Plaintiffs (collectively, "Plaintiffs") signed the Settlement Agreement in late April 2025.[15] In June 2025 the County's Board of Supervisors approved the settlement.[16] Wilkins now moves for the approval of the Settlement Agreement,[17] with the County's support.[18]

**B.      Summary of Proposed Settlement**

The parties to the Settlement Agreement are the County and Plaintiffs Anthony Wilkins, Arnisa Adewunmi, Karen Baladajadia, Karen Marshalleck, Letisha Stillwell, Marilyn Brooks, Mark MacNeill, Roberta Rodriguez, Sylvia Derhak, Mickie White-Stanich, Maxwell Setsoafia, Noemi Martinez, Dominique Jackson, and Iesha Brown.[19] The following is a summary of the key terms of the Settlement Agreement:[20]

---

[11] Lyon Declaration ¶ 17.
[12] *Id.*
[13] *Id.* at ¶ 20.
[14] *Id.* at ¶ 23.
[15] *Id.* at ¶ 22; *see id.*, Ex. 1 (the "Settlement Agreement") [ECF No. 81-1].
[16] Ridenhour Declaration ¶ 3.
[17] *See generally* Motion.
[18] Ridenhour Declaration ¶ 3.
[19] Settlement Agreement.
[20] *See generally id.*

1. **Resolution of Claims**

The County shall pay a Total Settlement Amount of $500,000.[21] From the Total Settlement Amount, a Total Payment of $319,000 shall be paid to Plaintiffs to settle the Action.[22] The Total Payment represents the total amount of unpaid overtime and liquidated damages owed to Plaintiffs for the relevant statutory period.[23] The County will issue the Total Payment as a lump sum to the Lyon Legal, P.C. Client Trust Account, from which Lyon Legal will distribute the individual payments to Plaintiffs.[24] Following its issuance of the payments, Lyon Legal will provide the County with a spreadsheet showing the amount of liquidated damages paid to each Plaintiff, and each Plaintiff will submit a current Form W-9 to the County.[25] The County will provide Plaintiffs with a Form W-2 regarding the back pay and wages portion of the settlement and with a Form 1099 for the liquidated damages portion, to the extent required by law.[26]

The amount to be paid to each Plaintiff was calculated by utilizing a damages analysis based upon the number of unpaid FLSA overtime hours worked and the amount of liquidated damages owed to each Plaintiff.[27] Then, some of the Total Payment was apportioned to each Plaintiff, such that 40% of

---

[21]  *Id.* at § 1(a).
[22]  *Id.* at § 1(b).
[23]  *Id.*
[24]  *Id.* at § 1(c).
[25]  *Id.*
[26]  *Id.*
[27]  *Id.* at § 1(d).

the Total Payment represents back pay for unpaid wages and 60% represents liquidated damages.[28]

### 2. Attorney's Fees and Costs

The County shall pay $181,000 of the Total Settlement Amount to Lyon Legal for the attorney's fees and costs of Plaintiffs' counsel.[29]

### 3. Time for Performance

The Total Payment for Plaintiffs and the payment for attorney's fees and costs shall be paid by the County no later than 40 days after the Court enters its Order approving the settlement.[30]

### 4. Dismissal of Litigation

Wilkins will dismiss the instant Action with prejudice. All Plaintiffs will withdraw or dismiss any related complaint, claims, grievances, or charges seeking FLSA overtime or minimum wage compensation that they have filed against the County for the relevant statutory period.[31]

### 5. Release of Claims

In exchange for the payments that they will receive, Plaintiffs will release the Released Parties from the Released Claims, as set forth below:[32]

> PLAINTIFFS understand that their acceptance of the TOTAL SETTLEMENT PAYMENT constitutes a full and complete settlement of all of their claims in the ACTIONS against the COUNTY under the FLSA for overtime pay and minimum wages that may exist or have existed during the Relevant Statutory Period,

---

[28] *Id.*

[29] *Id.* at §§ 1(d) & 3.

[30] *Id.* at §§ 4(b) & 4(c).

[31] *Id.* at § 5.

[32] *Id.* at § 6 (emphasis in original).

including all claims made in the ACTIONS for unpaid overtime and wages, liquidated damages, interest, and attorney's fees and costs, and PLAINTIFFS hereby fully, finally, and completely release, waive, and discharge the COUNTY, and its officers, agents, employees, successors and assigns from the claims under the FLSA for overtime and minimum wage that have occurred during the applicable Relevant Statutory Period ("RELEASED CLAIMS").

ALL PARTIES to this settlement understand that this release extends only to all grievances, disputes, or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to PLAINTIFFS' claims that the COUNTY violated the FLSA's overtime and/or minimum wage provisions. The PARTIES understand that this release does not include claims relating to conduct or activity that does not arise from or is not attributable to PLAINTIFFS' FLSA overtime or minimum wage claims, including any other employment claims that PLAINTIFFS may have against the COUNTY. The PARTIES understand that this is a compromise settlement of dispute claims, and nothing herein shall be deemed or construed at any time or for any purpose as an admission of the merits of any claim or defense.

The PARTIES further acknowledge that any and all rights granted them under section 1542 of the California Civil Code are hereby expressly waived regarding PLAINTIFFS' FLSA overtime and minimum wage claims during the Relevant Statutory Period, but not as to any other claims. Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR**

**RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

## II. LEGAL STANDARD

The FLSA was enacted to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). The FLSA was designed to give minimum protections to individual workers, *see id.*, and it allows for workers to join in a collective action "if they claim a violation of the FLSA, are 'similarly situated' to the original plaintiff, and affirmatively opt in." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108 (9th Cir. 2018). "Participation in the collective action is a statutory 'right' held equally and individually by each party plaintiff, whether originally appearing in the complaint or later opting in." *Id.* (citing 29 U.S.C. § 216(b)).

An employee may not settle and release an FLSA claim without obtaining approval from either the Secretary of Labor or a district court. *See* 29 U.S.C. §§ 216(b) & (c); *see also Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015). The Ninth Circuit has yet to establish a criterion for evaluating an FLSA settlement, so district courts in the Ninth Circuit often look to the Eleventh Circuit's standard set forth in *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *Reed v. Bridge Diagnostics, LLC*, 2023 WL 4833461, at *4 (C.D. Cal. July 27, 2023) (collecting cases). For a court to approve a collective action settlement under that standard, (1) the employee's claim must concern a *bona fide* dispute over FLSA liability; and (2) the

settlement must be a fair and reasonable settlement of that dispute. *See Lynn's Food Stores*, 679 F.2d at 1353.

### III. ANALYSIS

**A.  *Bona Fide* Dispute**

The Court first considers whether a *bona fide* dispute exists between the parties. "A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Reed*, 2023 WL 4833461, at *4 (quoting *Jennings v. Open Door Mktg., LLC*, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018)).

Here, the parties dispute whether the employees were classified as exempt or non-exempt.[33] The parties also dispute the relevant statute of limitations, raising questions about the extent of the County's potential liability for "willful" violations of the FLSA.[34] The parties engaged in rigorous written discovery and took numerous depositions,[35] and disputes remain relating to the existence, and the extent, of the County's FLSA liability.[36] Accordingly, the Court concludes that a *bona fide* dispute exists between the parties. Moreover, the Court finds that the purpose of the *bona fide* dispute requirement—to ensure that employees are not merely waiving statutory rights but are reaching a negotiated compromise in an adversarial context—has been satisfied. *See Lynn's Food Stores*, 679 F.2d at 1354.

---

[33]   *See* Motion 6:24-28; *see also* Def.'s Answer to the Amended Complaint [ECF No. 17] Affirmative Defenses 2 & 13.

[34]   Motion 7:20-26.

[35]   Lyon Declaration ¶¶ 7, 8, 12-15, 18, & 19.

[36]   *Id.* at ¶ 25(a).

### B. Fair and Reasonable Resolution

Next, the Court must examine whether the proposed settlement is a fair and reasonable resolution of the parties' dispute. When evaluating whether a proposed FLSA settlement is fair and reasonable, district courts in the Ninth Circuit often employ a totality-of-the-circumstances approach that parallels the analysis for evaluating a proposed class action settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure. *See Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016).

Under the Federal Rules of Civil Procedure, a district court may approve a proposed settlement of a class action only after finding the settlement to be "fair, reasonable, and adequate," after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Because a pure Rule 23 analysis "runs the risk of not giving due weight to the policy purposes behind the FLSA," *Selk*, 159 F. Supp. 3d at 1173, a court

must "adjust[] or depart[] from those factors when necessary to account for the labor rights at issue." *Id.* To do so, courts in the Ninth Circuit apply a modified Rule 23 analysis that considers: "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.*; *see also De Bernardi v. City & Cnty. of San Francisco*, 2021 WL 2207354, at *5 (N.D. Cal. June 1, 2021); *Estorga v. Santa Clara Valley Transportation Auth.*, 2020 WL 7319356, at *3 (N.D. Cal. Dec. 11, 2020).

### 1. Possible Range of Recovery

While the "settlement amount need not represent a specific percentage of the maximum possible recovery," *Selk* 159 F. Supp. 3d at 1174, cases settling at 25% or greater of the total possible recovery are often considered reasonable, *see id.* (finding a reasonable settlement that amounted to 26%-50% of the total possible recovery); *see also Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *3 (N.D. Cal. May 19, 2014) (finding that a reasonable settlement corresponded to the range of 30% to 60% of recoverable damages); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (finding that a settlement constituting approximately 25% to 35% of the total possible recovery was reasonable).

Here, Plaintiffs estimate that their maximum potential recovery ranges from approximately $850,000 to $1,500,000, depending upon ultimate findings related to the applicable statute of limitations, off-the-clock work hours, and liquidated damages.[37] At $500,000, the Total Settlement Amount is 33% to 58% of the maximum possible recovery. Thus, the range of Plaintiffs' direct

---

[37] Motion 8:22-26.

-11-

recovery—the $319,000 Total Payment amount—falls between 21.3% and 37.5% of the maximum possible recovery. Given that the percentage of recovery to be paid directly to Plaintiffs falls within the reasonable range of the maximum possible recovery without the risks that accompany continued litigation, the Court concludes that this factor weighs in favor of settlement approval.

### 2. Stage of Proceedings and Amount of Discovery Completed

When evaluating the stage of proceedings and the amount of discovery completed, district courts look to whether parties have "sufficient information to make an informed decision about settlement." *Selk*, 159 F. Supp. 3d at 1178 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Generally, this factor weighs in favor of approval when the parties have conducted sufficient discovery to make an informed decision. *See id.*; *see also Estorga*, 2020 WL 7319356, at *4. Here, Plaintiffs represent that they undertook substantial discovery, including "nearly 1,000 records detailing employee work shifts, hours, and policies."[38] In addition to written discovery, "each Plaintiff provided a declaration under the penalty of perjury to support their claims of hours worked that they were not compensated."[39] The extensive written discovery, combined with the depositions of Plaintiffs, the parties' participation in the formal mediation session, and the continued discovery following the mediation session, weigh in favor of approving the Settlement Agreement.[40]

### 3. Seriousness of the Litigation Risks

The Court finds it quite probable that continued litigation would pose risks to Plaintiffs—namely, the delay of relief, the possibility of a negative

---

[38] *Id.* at 11:23-26.

[39] *Id.*

[40] *See id.*; Lyon Declaration ¶¶ 7, 8, 12-15, 18, & 19.

outcome at trial, and increasing legal fees and expenses.[41] In view of the very real possibility that a trial could result in adverse decisions on the questions of willfulness—a result in which no liquidated damages would be awarded—or a calculation of overtime that is unfavorable to Plaintiffs,[42] the Court concludes that this factor leans in favor of approving the settlement.

### 4. Scope of Release Provision

When reviewing the scope of a release provision in a proposed settlement agreement, a district court must ensure that class members do not forfeit claims or waive rights that are unrelated to the instant Action. *See Selk*, 159 F. Supp. 3d at 1178. Here, the release in the Settlement Agreement is tailored to release only the specific FLSA Claims at issue for these specific Plaintiffs.[43] Accordingly, this factor weighs in favor of approving the settlement.

### 5. Experience and View of Counsel and Opinion of Plaintiffs

Courts have taken different views regarding the weight of this factor; some consider it heavily and others finding it minimally consequential. *See De Bernardi*, 2021 WL 2207354, at *5 (affording modest weight to the opinion of counsel). *But see Selk*, 159 F. Supp. 3d at 1176 (giving considerable weight to the opinions of counsel). As discussed previously, when evaluating FLSA actions it is of utmost importance for the court to ensure that employees engage in an adversarial negotiation, to avoid waiving their statutory rights. *See Lynn's Food Stores*, 679 F.2d at 1354. The presence of competent counsel who are willing to advocate vigorously for their clients is essential to such an adversarial process, and they are a vital part of the judicial process. Further, counsel are often in the best position to determine the strengths and weaknesses of their clients'

---

[41] Lyon Declaration ¶ 25.
[42] *See id.*; *see* Motion 9:16-20.
[43] Settlement Agreement § 6.

positions throughout the litigation process. Accordingly, the Court gives this factor considerable weight.

Counsel for Plaintiffs and for the County are well versed in FLSA and class action settlements.[44] Attorney Devon Lyon, counsel for Plaintiffs, testified, "I strongly believe the Settlement is fair and appropriate, is in the best interests of the Settlement Class, and will result in significant compensation to the participating Class members who worked for the County of Riverside Correctional Health Services Department. All 14 Plaintiffs have agreed that this is in the best interest of the class—not one Plaintiff has rejected this settlement."[45] Attorney Brian Walter, counsel for the County, similarly testified, "I believe the conditional settlement reached in this case is a reasonable resolution of the matter given the risks to each side."[46] Plaintiffs have not submitted any opinions on the record, beyond the signed Settlement Agreement, indicating their approval of the settlement.[47] The Court concludes that the opinion of counsel, in view of their extensive experience resolving disputes of this type and participating in the settlement proceeding with former Judge Walsh, weighs in favor of approving the settlement.

### 6. Possibility of Fraud or Collusion

Courts considering the possibility of fraud or collusion in the FLSA settlement context often follow the guidance provided by the Ninth Circuit in evaluating collusion in class action settlements. *See De Bernardi*, 2021 WL 2207354, at *6. When determining whether a settlement was the result of

---

[44] *See* Lyon Declaration ¶¶ 29-32; Walter Declaration ¶ 3; Perez Declaration ¶¶ 4 & 5.

[45] Lyon Declaration ¶ 24.

[46] Walter Declaration ¶ 4.

[47] *See generally* Settlement Agreement.

collusion in the class action context, courts look to whether counsel is to receive a disproportionate distribution of the settlement, whether the parties arrange for the payment of attorney's fees separate from class funds, and whether the parties arrange for fees not awarded to revert to the defendant, instead of class funds. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Here, there is little indication of fraud or collusion. Although the Motion does not explain how the Total Payment amount was reached, the division of the funds is explained as based upon a damages analysis of claimed unpaid overtime hours.[48] Both sides were represented by competent counsel, a substantial amount of discovery was undertaken, and the parties participated in a formal mediation process through which the mutually supported Settlement Agreement was reached.[49] *See De Bernardi*, 2021 WL 2207354, at *6 (finding that extensive discovery and formal mediation reduces the possibility of fraud or collusion). Accordingly, the Court concludes that there exists a low possibility of fraud or collusion, and this factor weighs in favor of approving the settlement.

For the foregoing reasons, the Court determines that the proposed Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute over FLSA liability, and it **GRANTS** Wilkins's unopposed Motion for approval of the Settlement Agreement.

C.  **Attorney's Fees and Costs**

The FLSA provides that the court shall, "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Fegley v.*

---

[48] *Id.* at § 1(d).

[49] *See* Motion 8:3-8; Lyon Declaration ¶¶ 7, 8, 12-15, 18, & 19; Walter Declaration ¶ 4; Ridenhour Declaration ¶ 3.

*Higgins*, 19 F.3d 1126 (6th Cir. 1994) (noting that an award of attorney's fees under the FLSA is mandatory).  The instant Settlement Agreement authorizes attorney's fees of $164,516.23, which is 33% of the total settlement amount, and it provides for the reimbursement of costs in the amount of $16,483.77.[50]

When a settlement has a common fund for the benefit of the class, the court may employ either the percentage-of-recovery method or the lodestar method to calculate appropriate attorney's fees.  *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  The percentage-of-recovery method works like it sounds; it is simply an award of a given percentage of the common fund.  *See id.*  The lodestar method is calculated by multiplying the reasonable hourly rate in the region by the number of hours the attorney or other timekeeper worked on the matter and summing together the total hours of all billing timekeepers.  *See id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Here, the 33% attorney's fee authorized in the Settlement Agreement exceeds the Ninth Circuit's benchmark for reasonable attorney fee awards.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (setting 25% as a benchmark for a reasonable fee award); *see also Glass*, 2007 WL 221862, at *14 (stating that "[t]he Ninth Circuit has repeatedly held that 25% of the gross settlement amount is the benchmark for attorneys' fees").

Plaintiffs' counsel avers that the requested fee is also supported by the lodestar cross-check,[51] the purpose of which is to guard against an unreasonable result.  *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 944-45; *see also In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the

---

[50]   Settlement Agreement §§ 1(d) & 3; Motion 13:1-4, 13:23-25, & 14:3-8.

[51]   Motion 13:23-25.

reasonableness of the hours worked and rates claimed is appropriate."). In the Motion and at the hearing, Plaintiffs' counsel argued that the lodestar method would support an attorney's fee award much higher than what is requested—in the range of $270,000.[52] The requested attorney's fees, in comparison, reflects only 60% of these incurred fees.

      Importantly, during oral argument, Plaintiffs' counsel justified the amount of time, work, effort, coordination, and diligence that they expended in connection with this matter. Plaintiffs' counsel and the County's counsel both spoke in support of the agreement as drafted, and the opt-in Plaintiffs' signatures on the Settlement Agreement—which expressly stated the amount of the proposed attorney's fee award—also indicate support for the requested award. *See Goodwin v. Citywide Home Loans, Inc.*, 2015 WL 12868143 (C.D. Cal. Nov. 2, 2015) (finding that the plaintiffs' signatures on the settlement offer and release forms in an FLSA action constituted collective assent that weighed in favor of granting a 33% award of attorney's fees); *see also Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984 (N.D. Cal. 2025) (concluding that an attorney's fees award of 30% was reasonable in view of the results achieved for the class and the risk that counsel incurred taking the matter on contingency).

      In view of the results achieved, as well as the risk, time, and intricacy of the subject matter, the Court hereby awards a fee of 30% of the gross settlement fund—$150,00.00.

      Plaintiffs assert that the total cost expenditures to Lyon Legal, P.C. were $19,903.93, but that "[Lyon Legal] will only seek a maximum recovery of $16,483.77 to allow for additional allocation to the Plaintiff and Opt-In Plaintiffs."[53] Plaintiffs have provided documentation demonstrating that they

---

[52]   *See id.* at 14:18-28.

[53]   *Id.* at 14:6-8.

-17-

expended $19,903.93 in costs.[54] The Court concludes that Plaintiffs' request for costs is reasonable and that it is properly supported by documentation. Accordingly, the Court awards Plaintiffs' full costs and **APPROVES** the payment of litigation costs in the amount of $19,903.93. As proposed by Plaintiffs at the hearing, the Court **DIRECTS** all remaining settlement funds to be distributed to the collective class, to be provided among Plaintiffs proportionally in accordance with the calculations proposed in the Settlement Agreement.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Wilkins's instant Motion [ECF No. 80] is **GRANTED** in substantial part.

2. The Settlement Agreement is **APPROVED**, including the release of all FLSA claims by all Opt-In Plaintiffs, as set forth in the Agreement, but with the exception of the award of full attorney's fees and costs, as set forth in Paragraphs 3 and 4 below.

3. The payment of Attorney's Fees in the amount of $150,000 is **APPROVED**, which the Court finds to be reasonable in relation to the relief obtained for Plaintiffs.

4. The payment of litigation costs in the amount of $19,903.93 is **APPROVED**.

5. The allocation and payment of settlement funds, as set forth in the Settlement Agreement, is **APPROVED**.

6. This action is **DISMISSED with prejudice** with respect to Wilkins and all Opt-In Plaintiffs who filed valid consents to join, and it is **DISMISSED without prejudice** as to all others.

---

[54] *See generally* Lyon Declaration, Ex. 3 [ECF No. 81-3].

7. In view of the Court's ruling herein on Wilkins's Motion, his recently filed motion to reopen the case [ECF No. 89] is **DENIED as moot**.

8. Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated: December 9, 2025

John "". "'o'com'
UNITED STATES DISTRICT JUDGE